UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE BLACK, | No. 2:21-cv-02371-DJC |
| Appellant, | |
| v. | <u>ORDER</u> |
| JOSEPH H. ATKINS, Jr., | |
| Appellee. | |

Dominique Black, Appellant, brought an adversary action in the Bankruptcy Court for the Eastern District of California seeking a judgement that his claim was non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).  The Bankruptcy Court granted judgement in Appellee Joseph H. Atkins, Jr.'s favor, and Appellant now seeks reversal of the Bankruptcy's Court's decision.

**I.   Background**

On February 19, 2010, Appellant secured a default judgement in the Superior Court of California, Marin County, against Joseph H. Atkins, Sr. (deceased) ("Debtor")[1] and three other defendants in Appellee's suit for breach of contract and fraudulent inducement related to an oral contract and payments for repair and customization

---

[1] All references to "Debtor" are to Joseph H. Atkins Sr., not his successor, Appellee Joseph H. Atkins, Jr. (*See* Appellee's Brief (ECF No. 20) at 5.)

work on Appellant's Motorhome ("the vehicle"). (Appellee's Excerpts of R. ("the Record" or "R.") (ECF No. 22) 114–115.) Prior to securing the judgement, Appellant settled with one other named defendant, David Tirpak. (*Id.*)

After Debtor filed for bankruptcy, Appellant initiated an adversary proceeding on April 3, 2019 seeking judgement that his claim against Debtor was a non-dischargeable claim under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6), because the debt was acquired through fraud, embezzlement or larceny, or a willful and malicious injury by the debtor, respectively. (*Id.* at 73–87.) Debtor passed away while the case was ongoing and was not able to testify. (*See id.* at 16.) Following a bench trial, the Bankruptcy Court found that Appellant had not produced clear and convincing evidence that Debtor either personally engaged in any fraud, embezzlement, larceny, or willful and malicious conduct, nor that Debtor was in partnership with those who had engaged in such conduct. (*Id.* at 28–31.) The Bankruptcy Court also did not find sufficient evidence that Appellant had personally the funds at issue. (*Id.* at 21–27.)

Appellant now seeks reversal of the Bankruptcy Court's judgement on the basis that the Bankruptcy Court was bound by the default judgment to find that Debtor had engaged in fraud, select factual findings were clearly erroneous, and that Appellant was deprived of due process.[2] Both Parties have issued multiple briefs (ECF Nos. 19, 20, 24, 25, and 27), and the Appellant has indicated this matter is ready for review (ECF No. 30). This matter is hereby submitted upon the briefs and record without oral argument pursuant to Local Rule 230(g).

**II.   Legal Standard**

An appellant may petition the district court for review of a bankruptcy court's decision. Fed. R. Bankr. P. 8013. The applicable standard of review is identical to that employed by circuit courts of appeal in reviewing district court decisions. *See Heritage Ford v. Baroff* (*In re Baroff*), 105 F.3d 439, 441 (9th Cir. 1997). Thus, legal

---

[2] As discussed below in Section III, Appellant has asserted other bases for appeal which the Court has found meritless.

2

conclusions are reviewed on a de novo basis, and factual determinations are assessed pursuant to a "clearly erroneous" standard. *In re Tucson Ests., Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990); *Murray v. Bammer* (*In re Bammer*), 131 F.3d 788, 792 (9th Cir. 1997) (en banc).

Findings of fact are "clearly erroneous" only if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *In re Marquam Inv. Corp.*, 942 F.2d 1462, 1466 (9th Cir.1991) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Appellant has the burden of proving such error has been committed, and the reviewing court should not reverse simply because another decision could have been reached." *Frazier v. Real Time Resols., Inc.*, 469 B.R. 889, 894 (E.D. Cal. 2012) (quoting *In re Windor Indus., Inc.*, 459 F. Supp. 270, 275 (N.D. Tex. 1978)).

**III.     Discussion**

As an initial matter, Appellant's appeal is procedurally deficient. In their brief, an appellant is required to, at the introduction, "identify[] the rulings presented for review, with appropriate references to the record," Fed. R. Bankr. P. 8014(a)(6), and, within the appellant's argument, describe "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies," *id.* at (a)(8). Further, the appellant must produce "any opinion, findings of fact, and conclusions of law relating to the issues on appeal, including transcripts of all oral rulings" and "[i]f the appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all relevant testimony and copies of all relevant exhibits." Fed. R. Bankr. P. 8009(a)(4) and (b)(5) (formerly cited as Rule 8006). If "findings of fact and conclusions of law are rendered orally on the record, it is *mandatory* that an appellant designate the transcript under Rule 800[9]." *In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999) (emphasis added).

////

Appellant failed to produce any portion of the record to the Court or cite to any portion of the record in his Opening Brief. In Appellee's Brief, (ECF No. 20), and Appellee's Motion to Identify Portions of the Record, (ECF No. 25), Appellee pointed out these deficiencies. Despite Appellant filing two subsequent pleadings (Appellant's Reply Brief ("Reply") (ECF No. 24) and Response to Motion to Identify Portions of the Record ("Response") (ECF No. 27)), Appellant did not produce any portion of the record. In his Response, Appellant identified portions of the record he believed to support his arguments, but again failed to produce the portions of the record to this Court. (Response at 1, 3–4.) Appellant thereafter filed a Notice of Case Readiness for Oral Argument (ECF No. 30) indicating that he does not intend to produce any additional materials. These procedural defects alone are grounds for the Court to dismiss the appeal. *See Sw. Administrators, Inc. v. Lopez*, 781 F.2d 1378, 1380 (9th Cir. 1986) (collecting cases). Appellant's *pro se* status does not excuse him from complying with the applicable rules, particularly where Appellant was granted additional time to file his Opening Brief, (Minute Order Granting Extension of Time (ECF No. 16)), and Appellant was made aware of and failed to cure the defects. *See In re Genaro*, No. BAP AK-06-1358-ZRB, 2007 WL 7535064, at *3 (B.A.P. 9th Cir. May 14, 2007).

However, Appellee has provided the relevant portions of the record, including the portion of the transcript reciting the Bankruptcy Court's findings of fact and conclusions of law. (*See* R. (ECF No. 22).) While "[a]n appellate court is not obligated to search the record for error," the Court will nevertheless review the portions of the record produced by Appellee. *See Friedman v. Sheila Plotsky Brokers, Inc.* (*In re Friedman*), 126 B.R. 63, 68–69 (9th Cir. BAP 1991), *overruled on other grounds by Zachary v. Cal. Bank & Tr.*, 811 F.3d 1191 (9th Cir) (reviewing the record for error despite Appellant failing to reference the record or provide the transcript); *In re McCarthy*, 230 B.R. at 417 (exercising the court's discretion to review the record before the court instead of dismissing the appeal).

In his Opening Brief, Appellant initially asserted that the Bankruptcy Court erred in finding that "the debt did not rightfully belong to Plaintiff . . . on the sole fact that the Plaintiff had the debt provided to the debtor through a third-party intermediary," and in declaring the debt a voidable preference under 11 U.S.C. § 547(b). (Appellant Opening Brief (ECF No. 19) at 1–2.) However, in the same document, Appellant confirms that the only issues before the Bankruptcy Court were whether the Appellant's claim was non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). (*Id.* at 4.) As Appellee has noted, and the Court has confirmed in its review of the Record, the Bankruptcy Court did not make findings or issue ruling related to whether there was a third-party intermediary, or whether the debt was a voidable preference. (Appellee's Brief at 21–22.) Because the Bankruptcy Court did not make the findings complained of, the appeal on these bases is dismissed. *See In re Mortg. Store, Inc.*, 773 F.3d 990, 998 (9th Cir. 2014) ("In general, 'a federal appellate court does not consider an issue not passed upon below.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

In Appellant's Reply Brief, Appellant raised a new argument that the Bankruptcy Court abused its discretion in finding there was no fraud because the issue had already been decided by the prior state court judgement. (Reply at 9–11.) Appellant also asserted that the Bankruptcy Court erred in its factual findings that Debtor had not personally committed fraud, and that there was insufficient evidence that Appellant had personally paid the funds at issue. (*Id.* at 5–6, 9.) Appellant claims he was denied due process because of the failure to find that the debt was non-dischargeable as a matter of law. (*Id.* at 9.)

In his Response, Appellant also claimed that he had ineffective assistance of counsel which warrants reversal of the judgement. (Response at 1–2.) Because civil litigants do not have a constitutional right to effective assistance of counsel, the appeal on this basis is dismissed. *See In re Tolley*, No. 3:20-AP-03112-DWH, 2021 WL 6067046, at *6 (B.A.P. 9th Cir. Dec. 21, 2021); *Pioneer Inv. Servs. Co. v. Brunswick*

*Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) (civil litigants are "held accountable for the acts and omissions of their attorneys.").

The Court will therefore review the Bankruptcy Court's legal ruling that the state court judgement was not preclusive, the Bankruptcy's Court's factual findings with respect to whether Debtor engaged in fraud and whether Appellant had personally paid the funds to the Debtor, and Appellant's due process claim.

### A. Collateral Estoppel

Preclusion principles, including collateral estoppel, apply in bankruptcy proceedings, and may be used to establish the non-dischargeability of a debt pursuant to section 523(a).  *See Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001).  "[F]ederal courts [must] give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *see also In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir. 1995) (the estoppel law of the state issuing judgement controls).

In California, the collateral estoppel doctrine provides that "an *issue* 'necessarily decided in prior litigation may be conclusively determined *as against the parties thereto or their privies* . . . in a subsequent lawsuit on a *different* cause of action.'"  *Vandenberg v. Superior Ct.*, 21 Cal. 4th 815, 828 (1999) (quoting *Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.*, 58 Cal. 2d 601, 604 (1962)) (emphasis is original) (cleaned up).  Collateral estoppel differs from res judicata in that the latter prevents only re-litigation of the same cause of action.  *Id.*  An issue is subject to preclusion where there has been a (1) final decision; (2) of an identical issue; (3) which was actually litigated and necessarily decided; and (4) is asserted against a party to the first suit or a party in privity with the original party.  *Grande v. Eisenhower Med. Ctr.*, 13 Cal. 5th 313, 323 (2022); *see also In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001) (reciting California's collateral estoppel standard).

////

Appellant asserts that "it was not for the Bankruptcy Court to decide whether or not fraudulent representation had taken place . . . [because] the Bankruptcy Court had a legally binding obligation to respect and adhere to the State Court judgement entered against the debtor . . . ." (Reply at 11.) In the state court case, Appellant brought two causes of action, one for breach of contract, and one for fraudulent inducement, and was granted a declaratory judgement. (*See* ECF No. 25 at 13; Reply at 9.) The Bankruptcy Court held that the issue of fraud was not subject to collateral estoppel because the complaint was for two causes of action, and the judgement did not contain findings or state on which cause of action judgement was being granted. (ECF No. 22 at 18–19; *see also* ECF No. 25 at 13.) The Court reviews this legal conclusion de novo. *See In re Tucson Ests., Inc.*, 912 F.2d at 1166.

While a default judgement may have preclusive effect as any other judgement, it does not necessarily result in issue preclusion. *See In re* Harmon, 250 F.3d at 1246–47. For a default judgement to meet the "actually litigated and necessarily decided" factors, the proponent must show that the court made "express findings" as to the issue, or that such a finding was necessary for the judgement, even if it was not express. *Id.* at 1247–49 (citing *Williams v. Williams* (*In re Williams' Estate*), 36 Cal.2d 289, 223 (1950) (in bank)). The state court judgement does not meet these standards. As the transcript shows, the state court judge merely resolved issues of whether the Appellant was entitled to attorneys' fees, and the amount of the judgement. (ECF No. 25 at 18–21.) The state court did not issue findings of fact or law and did not state which cause(s) of action the court was entering judgement for. (*Id.*) "[A] court's silence concerning a pleaded allegation does not constitute adjudication of the issue." *In re Harmon*, 250 F.3d at 1247. Because it was possible for the state court to have entered judgement only on the breach of contract claim and not the fraudulent inducement claim, it was not necessary for the judgement that the state court had found in favor of Appellant on the issue of fraud. Because it is not clear that the issue

////

of fraud was actually adjudicated or necessarily decided by the state court, the Bankruptcy Court did not error in determining that the issue was not precluded.

### B. Factual Findings

The Court must grant great deference to the Bankruptcy Court's factual findings, which can only be set aside if there is clear error. *Stern v. Marshall*, 564 U.S. 462, 487 (2011). "A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010). "When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note 'variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

Because the Bankruptcy Court found that the fraud issue was not precluded, the court made its own finding of fact as to whether the Debtor committed the fraud required for a finding of non-dischargeability under section 523(a). The Bankruptcy Court concluded that Appellant did not establish by clear and convincing evidence that Debtor himself had committed fraud, or that the Debtor was associated with those who committed the alleged fraud. (R. at 28–29.) The Bankruptcy Court also found that the Appellant had not himself made the payments at issue because the Appellant paid for the repairs through multiple business entities and could not provide evidence regarding whether he reconciled those payments. (R. at 21, 26–27.)

Although the Court does not have the benefit of the full transcript of Appellant's testimony due to Appellant's failure to produce the record, based on the portions of the record before it, including Appellant's Complaint filed in the Bankruptcy Court, the Court has surmised the following: the Appellant entered the initial agreement to perform work on the vehicle in 1999 with two different individuals named David Tirpak and Anthony Sarganis, who owned a Motorhome repair business.

(R. at 74.) Appellant alleges that Debtor was also an owner of the business and associate of Tirpak and Sarganis. (*Id.*) Appellant alleges Tirpak and Sarganis misrepresented whether they had appropriate licensing to perform work on the vehicle before they entered into an oral contract for the repairs. (*Id.* at 75.) Between 2000 and 2006, the business issued multiple invoices for various repairs and Appellant provided advanced payments for the repairs. (*Id.*) In January 2006 Tirpak admitted to creating fraudulent invoices and embezzling the advanced funds. (*Id.* at 75-76.) Appellant did not meet Debtor until late 2005 or early 2006, but alleges that Tirpak told Appellant in 2002 that Debtor was associated with business and performed "finish work." (*Id.* at 76.) Tirpak assigned the lease for the repair business to Debtor on September 22, 2006, after which Debtor took possession of the vehicle, asserted a mechanic's lien on the vehicle, and allegedly dismantled the vehicle for parts. (*Id.* at 77.) On August 31, 2007, after the lease on the facility expired, Appellant worked with the landlord of the property to recover his vehicle. (*Id.*)

      The Bankruptcy Court determined that only Tirpak and Sarganis had engaged in fraudulent activity and collected the funds from Appellant, and that there was not clear and convincing evidence that Debtor was in partnership with Tirpak and Sarganis. The Court finds this conclusion to be well supported by the record, including by Appellant's own allegations. All the allegedly fraudulent interactions occurred only with Tirpak and Sarganis, the allegedly false license had only the names of Tirpak and Sarganis on it, and all of the invoices were from before Debtor was assigned the lease for the business. (*Id.* at 23, 89-105.) Appellant did not provide the Court with other documentary evidence that Debtor was also an owner or operator of the business. (*Id.* at 17, 20.) The only documentary evidence of Debtor's association with the business was the lease assignment from September 2006, after the invoices had been charged. (*Id.* at 25, 107-09.) The Appellant also produced a declaration from Tirpak which did not state that Debtor was a partner in the business. (*Id.* 25-26.) In fact, the only evidence that Appellant produced to show that Debtor was a partner

9

in the business is Appellant's testimony that Tirpak told Appellant that Debtor was responsible for finish work in 2002, and Appellant's testimony of his own belief that Debtor was a partner, which the Bankruptcy Court found to not be credible evidence. The Bankruptcy Court's finding that Appellant had failed to meet his burden of establishing that the Debtor committed a fraud or misrepresentation or was in partnership with Tirpak and Sarganis who allegedly committed fraud is not clearly erroneous.

The Bankruptcy Court also found that Appellant did not personally make the payments to the Debtor both because Debtor was not part of the business before 2006, and because the funds were paid by various LLCs that Appellant was involved in. In California, "[c]orporations and LLCs are distinct legal entities, separate from their stockholders or members. The acts of a corporation or LLC are deemed independent of the acts of its members." *Abrahim & Sons Enterprises v. Equilon Enterprises, LLC*, 292 F.3d 958, 962 (9th Cir. 2002). Appellant apparently attempted to argue that the payments were all made out of a central pot, and that he himself effectively made the payments because he reconciled the funds. (R. at 21–27.) The Bankruptcy Court found that Appellant's testimony that he had reconciled the funds was not credible because there were no records to show that any of the payments could be traced back to Appellant. (*Id.*) Instead, the Bankruptcy Court found that Appellant's testimony showed that he disregarded the independent corporate structure of the LLCs and was unclear about his role in each of the various corporate entities. (*Id.* at 19–27.) The Bankruptcy Court also pointed to the evidence that the title to the vehicle was in the name of an LLC and not in Appellant's name. (*Id.* at 25.) Given that the testimony about reconciling the funds was not credible, and that Appellant provided no other evidence that he made the payments or reconciled the payments, the Bankruptcy Court did not commit error in determining that Appellant had not provided clear and convincing evidence that he himself made the payments.

Because the Bankruptcy Court's factual findings were not clearly erroneous, the Court AFFIRMS the Bankruptcy Court's judgement.

### C. Due Process

The touchstone of due process is fundamental fairness.  *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321 (1985).  Generally, a procedure is fundamentally fair if a party is given an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Appellant does not appear to challenge whether he was given a meaningful opportunity to be heard, nor could he considering that he was afforded the opportunity to present evidence and testify in the proceedings.  Instead, Appellant alleges that he was denied due process because of the Bankruptcy Court's allegedly erroneous rulings and findings of fact.  Because the Court has found that the Bankruptcy Court did not commit error, Appellant's due process claim on this basis must fail.

### IV. Conclusion

For the above reasons, the Court hereby AFFIRMS the Bankruptcy Court's ruling. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **November 27, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – Atkins21cv02371.BnkrAppl